**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| STEPHEN GERARD ENNIS, | : | |
| Petitioner, | : | |
| vs. | : | CA 20-0366-KD-MU |
| LEON BOLLING, | : | |
| Respondent. | : | |

## REPORT AND RECOMMENDATION

Stephen Gerard Ennis, a state prisoner presently in the custody of the respondent, has petitioned this Court for federal habeas corpus relief pursuant to 28 U.S.C. § 2254. (Doc. 7). This matter has been referred to the undersigned for the entry of a report and recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72, and General Local Rule 72(a)(2)(R). It is recommended that the instant petition be dismissed as time barred under the Anti-Terrorism and Effective Death Penalty Act's one-year limitations provision contained in 28 U.S.C. § 2244(d). Alternatively, it is recommended that the Court find that it is procedurally barred from reaching the merits of the claims raised by Ennis herein.

## FACTUAL BACKGROUND

On October 8, 2015, a jury of Ennis' peers returned a verdict finding him guilty of the murder of Joseph Berryhill (Doc. 13-7, PageID. 637; *see also id.,* PageID. 638-39), and on November 10, 2015, he was sentenced to life imprisonment (*id.*, PageID. 650). Defense counsel entered oral notice of appeal (*id.*, PageID. 651) and, as well, provided

the court with a written notice of appeal (*id.*). The unpublished memorandum decision of

the Alabama Court of Criminal Appeals on Ennis' direct appeal (*see* Doc. 13-11,

PageID. 764-777) contains an excellent summary of the evidence at trial beyond which

this Court has no reason to stray.

> Joseph Berryhill was 19 years old and about to graduate from high school when he was shot and killed on April 16, 2013. On April 26, 2013, Ennis confessed to shooting Berryhill.

> Kesha Wingfield testified that Berryhill was an ex-boyfriend of hers and that she had seen him on April 16, 2013. On that day, Berryhill was walking down Wilson Avenue in Prichard and Wingfield saw him, stopped her car, and picked him up. Wingfield exchanged telephone numbers with Berryhill and then dropped him off, promising to meet him later. Later that afternoon, Wingfield met Berryhill again and drove him to pick up a check from his workplace, to a Walmart to cash the check, and then to a few other places. As Wingfield drove, she noticed that someone kept trying to call Berryhill's cellular telephone. Wingfield was able to read one of the text messages on Berryhill's cellular telephone and it said something about going to visit another one of his friends named "Black;" however, Wingfield did not know Black. Around 5:00 p.m., Wingfield dropped Berryhill off at a house on Wilson Avenue. When he was dropped off, Berryhill was wearing his school uniform. Wingfield saw a man named Curtis Pugh outside of the house; Pugh was at the house earlier when Wingfield picked up Berryhill. Around 9:00 p.m. that night, Wingfield texted Berryhill because they were supposed to go out together, but Berryhill never responded.

> Corporal Tashaon Pettway of the Prichard Police Department testified that he received a report on April 18, 2013, that someone had discovered a dead body. Detective Pettway responded to the scene and discovered Berryhill's body behind the Versailles Mini Mall. Berryhill was lying against the wall of a drainage ditch; he was wearing a school uniform and his pants' pockets "were gone through" and there were no items inside. An autopsy was performed on Berryhill and revealed that Berryhill was shot several times and died as a result of the gunshot wounds.

> Robert Martin, a corporal with the Prichard Police Department, was assigned to investigate the case. Initially, Detective Martin did not have any suspects until the person who reported the dead body gave him information that six or seven teenagers would regularly hang out at a house on Dickens Street. Detective Martin traveled to the house and spoke with several of the teenagers—Demarcus Lassiter, Justin

Robinson, and Frederick Carroll—and developed Ennis as a suspect in the murder. On the morning of April 26, 2013, Detective Martin traveled to Ennis's house and spoke with his parents. Ennis was not at home at the time, and his father later transported him to the police station for an interview. Detective Martin advised Ennis of his full juvenile Miranda rights. After waiving those rights, Ennis confessed to shooting Berryhill.

After the confession, Detective Martin transported Ennis to the scene where Berryhill's body was discovered. At the scene, Ennis pointed out the location where they had been standing when the shooting took place.

Japonica James testified that she was friends with Ennis and grew up in the same neighborhood as him. A portion of an interview between James and Detective Martin was played for the jury. James told Detective Martin that she was hanging out at a house with Ennis and several other people when she overheard them plotting to rob Berryhill. James said that Berryhill wanted to get some "Mojo" from Ennis at the time of the robbery.

Jerry Frison testified that he was incarcerated in the metro jail with Ennis and had spoken to him while they were in jail together. According to Frison, Ennis was crying in his cell one day and Frison stopped to ask what was wrong. Ennis said that he did not want to be in [jail] for something he did not do. Ennis claimed that he and his "homeboy" were walking and saw a guy that his "homeboy" knew. Ennis said that the guy stopped to talk to his "homeboy" for a few minutes, and then was shot by his "homeboy" after Berryhill took off running. Ennis told Frison that they "want[ed] to rob [Berryhill] because ["homeboy"] was in this type of gang called Bloods and ["homeboy"] had to go through five days of hell." As they approached the man, Ennis said that [he] started talking to Berryhill because he knew him and then Ennis's "homeboy upped the gun and the dude ran."

(*Id.,* PageID. 764-66) (internal citations omitted).

On appeal, Ennis challenged his confession, arguing it should have been

suppressed because of threats and intimidation by police officers. (Doc. 13-9, PageID.

714). In addition, Ennis contended that the State failed to present sufficient proof

independent of his confession to allow his case to be presented to the jury or to allow

the confession's admission into evidence. (*Id.*). The Alabama Court of Criminal Appeals

affirmed Ennis' conviction and sentence on August 5, 2016. *See Ennis v. State,* 231

So.3d 1151 (Ala. Crim. App. Aug. 5, 2016) (table).

Ennis contends that the circuit court erred when it denied his motion to suppress the statement he gave to law-enforcement officials. Specifically, Ennis argues that his statement was illegally coerced and in violation of his <u>Miranda</u> rights because, he says, that (1) his waiver of the rights was a result of threats made by police and (2) he was unable to knowingly and intelligently waive his rights because of his inexperience with the criminal justice system, his age, and his diminished mental abilities.

The record indicates that Ennis was brought into the police station by his father to meet with detectives for an interview. Ennis, Ennis's father, Detective Martin, and Detective Pettway were all present in the room during the interview. Ennis was 14 years old at the time and advised of his juvenile <u>Miranda</u> rights. Ennis said that he understood these rights and also signed a written waiver form indicating that he understood his rights and wished to speak to [the] detectives; Ennis's father also signed the written waiver. In his statement, Ennis told police he and his friend, "Curt," were walking down the street and went into a field near abandoned houses in order to smoke marijuana. As Ennis and Curt smoked, Berryhill approached them with a gun and told them not to move. Ennis said that he shot Berryhill, dropped his gun, and fled the scene.

During the interview, one of the detectives accused Ennis of lying about telling anyone else about the shooting. In a video of the interview that this Court viewed, the detective stated:

"So now you can either start telling me the truth or you can play this game and . . . we can take you to metro and they can charge you as an adult and you can face capital murder charges and get charged with the death penalty and end up about 20 years later with a needle in your arm."

Before trial, Ennis filed several motions to suppress the statements that he made to police, and the circuit court held a hearing on the suppression issue. At the hearing, Detective Martin testified that he interviewed Ennis on April 26, 2013. Before the interview, Ennis was advised of his juvenile <u>Miranda</u> rights and both Ennis and Ennis's father signed the waiver. Detective Martin testified that neither officer made any kind of threats towards Ennis during the interview. According to Detective Martin, the statement about the death penalty "wasn't done as a threat," but was instead "a statement given by the detective in order to try to get

the subject to be more truthful." Detective Martin testified that Ennis did not appear to be scared or alarmed after hearing the statement, but admitted that it possibly scared Ennis.

Detective Pettway testified that he made the statement about the death penalty because he did not think that Ennis appreciated the seriousness of the crime to which he was confessing. Detective Pettway denied making any threats to Ennis and said that the death penalty statement was neither threatening nor was it perceived by Ennis to be a threat. Detective Pettway also denied making any promises of leniency in order to encourage Ennis to tell the truth.

Defense counsel presented the following evidence: Ennis's father testified that two police officers came to his house looking for Ennis around 2:00 a.m. one morning. Ennis's father told the officers that Ennis was not home and that he did not know where Ennis had gone. The officers told Ennis's father

> "If you don't bring him down here to us, you know, the same thing when I went down there he said we are going to have a BOLO out on him, armed and dangerous, and you know what that means . . . that the officer[s] have a right to shoot and kill."

Ennis's father testified that he went searching for Ennis, found him, and transported him to the police station. Ennis's father testified that Ennis's demeanor changed and he became scared when the detective began talking about the death penalty in the interview. Although Ennis's father believed that the officers were intimidating at times, he admitted they were not hostile towards Ennis during the interview. According to Ennis's father, Ennis had only gone to school through the seventh grade and was on medication that made him "up and down."

Ennis's mother testified that Ennis had been treated for mental issues since the third grade. Ennis had been going to the Alabama Department of Mental Health twice a month; his mother said that they gave him pills and "didn't want to say that [his condition] was bipolar." Ennis's mother said that when he took his medication, he would "do something, like he might flip the table over and then he'll come back and say can I get some water like nothing even has happened."

The circuit court subsequently denied Ennis's motion to suppress his statements to police.

Confessions and inculpatory statements are inadmissible unless the State proves that the defendant was informed of his <u>Miranda</u> rights

and that he or she waived them, and that the confession was voluntarily given.

> The general rule is that a confession or other inculpatory statement is prima facie involuntary and inadmissible and the burden is on the State to prove by a preponderance of the evidence that such a confession or statement is voluntary and admissible. To prove voluntariness, the State must establish that the defendant made an independent and informed choice of his own free will, that he possessed the capability to do so, and that his will was not overborne by pressures and circumstances swirling around him. If the confession or inculpatory statement is the result of custodial interrogation, the State must also prove that the defendant was properly advised of, and that he voluntarily waived, his <u>Miranda</u> rights.

The trial court's finding that a statement was voluntary need only be supported by a preponderance of the evidence.

> In determining whether a statement is voluntary, a reviewing court must look at the totality of the circumstances surrounding the confession. When determining the admissibility of a confession, this Court must look at the entire circumstances, not only the behavior of the interrogators in creating pressure, but also the defendant's experience with the criminal justice system and personal characteristics.

> Alabama courts have also held that a court must consider the totality of the circumstances to determine if the defendant's will was overborne by coercion or inducement. . . . Thus, the test of involuntariness of a confession, or other inculpatory statement, is not whether the defendant bargained with the police, but whether in his discussions with the police, which may have included bargaining, the defendant's will was overborne by apprehension of harm or hope of favor. To determine if a defendant's will has been overborne, we must assess the conduct of the law enforcement officials in creating pressure and the suspect's capacity to resist that pressure; [t]he defendant's personal characteristics as well as his prior experience with the criminal justice system are factors to be considered in determining [the defendant's] susceptibility to police pressures.

Based on the totality of the circumstances in the instant case, Ennis was advised of his juvenile <u>Miranda</u> rights and voluntarily waived those rights before he was questioned regarding the shooting of Berryhill. Ennis's father was present during the interview. Despite Ennis's claims that he was 14 years old, had no experience with the criminal justice system, and had some mental troubles at the time of the confession, we cannot say that his confession was involuntary. Although one of the detectives mentioned the death penalty in the interview, Ennis had already confessed to shooting Berryhill before the detective made that statement. Furthermore, we cannot say that Ennis's will was overborne by the detective's statement. Moreover, Ennis did not materially alter his statement after the alleged threat was made. Accordingly, Ennis is entitled to no relief on this claim.

II.

Ennis also contends that the circuit court erred when it denied his motion for a judgment of acquittal. Specifically, Ennis argues that his confession was uncorroborated and, therefore, was insufficient to show the corpus delicti of the charged crime.

This Court has explained:

It has been the rule in Alabama that the State must offer independent proof of the corpus delicti of the charged offense to authorize the admission of a defendant's confession or inculpatory statement. The corpus delicti consists of two elements: (1) That a certain result has been produced . . . and (2) that some person is criminally responsible for the act. Positive, direct evidence of the corpus delicti is not indispensable to the admissions of confessions. The corpus delicti may be established by circumstantial evidence.

.     .     .

Further, it is well settled that inconclusive facts and circumstances tending prima facie to show the corpus delicti may be aided by the admissions or confession of the accused so as to satisfy the jury beyond a reasonable doubt, and so to support a conviction, although such facts and circumstances, standing alone, would not thus satisfy the jury of the existence of the corpus delicti.

While a confession is inadmissible as prima facie proof of the corpus delicti, it can be used along with other evidence to satisfy the jury of the existence of the corpus delicti. As Professor Gamble has observed:

> The purpose of requiring proof of the corpus delicti, as a condition precedent to the admission of a confession, is to insure its trustworthiness. For this reason, there is some judicial language to the effect that corroborative evidence independent of the confession need not be sufficient to establish corpus delicti but must be sufficient independent evidence which would tend to establish the trustworthiness of the confession.

.     .     .

Furthermore,

> In determining the sufficiency of the evidence to sustain a conviction, a reviewing court must accept as true all evidence introduced by the State, accord the State all legitimate inferences therefrom, and consider all evidence in a light most favorable to the prosecution. The test used in determining the sufficiency of evidence to sustain a conviction is whether, viewing the evidence in the light most favorable to the prosecution, a rational finder of fact could have found the defendant guilty beyond a reasonable doubt.

.     .     .

> Ennis was convicted of murder. Section 13A-6-2(a)(!), Ala. Code 1975, states that a person commits the crime of murder if with intent to cause the death of another person, he causes the death of that person. In the case of a homicide, where the charge is murder, manslaughter, or criminally negligent homicide, the corpus delicti includes two requirements: (1) the death of the victim named in the indictment, and (2) that the death was caused by the criminal agency of another.

> Although the facts and circumstances surrounding the offense may be inconclusive without Ennis's confession, they do tend to prima facie show the corpus delicti of the offense. Berryhill's body was discovered behind a mini mall and his body had several gunshot wounds. Berryhill was

discovered wearing the same clothing that Wingfield had seen him wearing on the day that he picked up his paycheck and cashed it; his pockets were turned inside out and he had no money on his person. James's recorded interview indicated that James was hanging out with Ennis and several others when she overheard them plotting to rob Berryhill. After confessing to detectives, Ennis took detectives to the location where the shooting took place. Thus, the evidence was sufficient to corroborate the corpus delicti of murder. Accordingly, Ennis is entitled to no relief on this claim.

Based on the foregoing, the judgment of the circuit court is affirmed.

(Doc. 13-11, PageID. 766-777 (most internal citations, quotation marks and brackets omitted)). The Alabama Court of Criminal Appeals issued its certificate of judgment of final affirmance on August 24, 2016 (Doc. 13-12, PageID. 778), which was received by the Mobile County Circuit Court at 1:30 p.m. and docketed (Doc. 13-1, PageID. 128). That same day, at 2:26 p.m., Ennis, through appellate counsel, e-filed an Application for Rehearing with the Clerk of the Alabama Court of Criminal Appeals (Doc. 13-13, PageID. 779-782); this pleading, however, was stricken by the Presiding Judge on August 26, 2016, on the basis that Ennis' application for rehearing was not timely filed in accordance with Rule 40 of the Alabama Rules of Appellate Procedure[1] (Doc. 13-14, PageID. 783).

---

[1]     Rule 40 specifically provides that "[a]n application for rehearing and the brief in support of the application must be filed with the clerk of the appropriate appellate court within 14 days (2 weeks) of the date the decision being questioned is issued[.]" Ala.R.App.P. 40(c). Given that the Alabama Criminal Appeals entered its memorandum opinion affirming Ennis' conviction and sentence on August 6, 2016, Ennis had until August 20, 2016 to file his application for rehearing in the Alabama Court of Criminal Appeals. Thus, his failure to timely do so resulted in the striking of his application for rehearing filed on August 24, 2016. In addition, Ennis' failure in this regard made him ineligible for certiorari review by the Alabama Supreme Court. *See* Ala.R.App.P. 40(d)(1) ("In all criminal cases except pretrial appeals by the state, the filing of an application for rehearing in the Alabama Court of Criminal Appeals is a prerequisite to certiorari review by the Alabama Supreme Court.").

Ennis did not collaterally attack his conviction and sentence in the state courts of Alabama, by way of a Rule 32 petition or any other state postconviction petition. (*Compare* Doc. 7, PageID. 90-92 *with* Doc. 13, PageID. 118 & Doc. 13-1, PageID. 128-29). Instead, after the conclusion of all direct appeal proceedings in the Alabama Court of Criminal Appeals, which were effectively over by August 26, 2016, the Circuit Court of Mobile Count, Alabama did not hear from Ennis again until late January of 2019 and then, again, in late November of 2019. (*Compare id.,* PageID. 128-29 *with* Docs. 13-15 & 13-17). On both occasions, Ennis wrote the trial judge a three-page letter and requested that his life sentence be reduced. (*Compare* Doc. 13-15, PageID. 784-86 *with* Doc. 13-17, PageID. 789-791). Both letters were effectively construed as motions for reconsideration of sentence and denied. (*Compare* Doc. 13-1, PageID. 128-29 *with* Doc. 13-16, PageID. 788 & Doc. 13-18, PageID. 793).

Ennis initially filed his federal habeas corpus petition in this Court on or about July 20, 2020 (*see* Doc. 1) but because the pleading was not on this Court's form, Petitioner was ordered to file his federal attack on this Court's form and ultimately did so on September 22, 2020 (Doc. 7). In his federal petitioner, Ennis raises the following claims he asserts entitle him to relief: (1) his confession was obtained by police detectives in violation of his constitutional rights, particularly given his tender age (14); and (2) the trial court erroneously admitted his confession into evidence at his trial. (*See* Doc. 7, PageID. 93 & 94).

In his federal petition, Ennis attempts to explain why the one-year limitations period contained in 28 U.S.C. § 2244(d) does not apply to him, noting he has been incarcerated since the tender age of 14 (or 15) based on a confession unconstitutionally

obtained and introduced into evidence against him, he has little education and was

without funds after his direct appeal to hire counsel to assist him (and his family could

no longer afford to pay an attorney to assist him). (Doc. 7, PageID. 98). He more

broadly reiterates these same arguments in his timely typewritten response to the

undersigned's show cause order dated January 11, 2021 (Doc. 15; *compare id. with*

Doc. 14).

> 1.      I was arrested on a charge of murder on April 26, 2013,
> when I was fourteen (14) years of age and was in the seventh grade. My
> date of birth is September 12, 1998. I was convicted on November 10,
> 2015, when I was seventeen (17) years of age. I spent most of my time
> between my arrest and my trial incarcerated and was unable to continue
> with any education.
>
> 2.      At the time of my arrest I was a minor and had very limited
> skills as to reading and writing, and I had little or no knowledge about the
> legal system. I have been incarcerated since I was fifteen (15) years of
> age.
>
> 3.      At the time that I filed this Petition seeking relief, I had just
> attained the age of twenty-one (21) years, I still have no formal education
> and I [] remain limited in my ability to read and write and I do not have a
> skilled knowledge as to time limitations as to the filing of any motions or
> pleadings, in federal or state court.
>
> 4.      My family has very limited resources and are unable to
> afford to pay for the services of an attorney or other legal provider to assist
> with this pending petition or any other legal proceedings since my
> incarceration.

(Doc. 15, PageID. 796-97). That same day, January 11, 2021, Ennis added these

handwritten thoughts regarding the one-year limitations period. (Doc. 16).

> The reason why I failed to file the federal habeas petition [was] because
> my lawyer never let me know what was going on with my case after I was
> sent to prison and I never receive[d] no legal mail stating that I had to file
> any paperwork due to this Petition. My mother paid the lawyer [$]3,000 for
> an appeal the same day I was sentence[d]. I was never [in] court for no
> motion that was file[d] on my case[.] So I feel I shouldn't be responsible for
> this failure to obey. I never was acknowledge to have knowledge of this.

(*Id.,* PageID. 799).

## **CONCLUSIONS OF LAW**

A.    **Statute of Limitations.**    The Anti-Terrorism and Effective Death Penalty

Act of 1996 ("AEDPA") was enacted on April 24, 1996 and, pertinent to this case, added

a new subdivision to 28 U.S.C. § 2244 providing for a one-year period of limitations

within which state prisoners must file their habeas corpus petitions pursuant to 28

U.S.C. § 2254. *Wilcox v. Florida Dep't of Corrections*, 158 F.3d 1209, 1210 (11th Cir.

1998).

> (d)(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation period shall run from the latest of—
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> (2)  The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d).

Subsections (B), (C), and (D) of § 2244(d)(1) clearly do not apply to Petitioner's case, and Ennis makes no showing that any of these subsections apply; therefore, the timeliness of Ennis' petition must be calculated under § 2244(d)(1)(A) based upon the date on which his murder conviction became final. "For prisoners whose convictions became final prior to the effective date of the AEDPA, the one-year statute of limitations instituted by the AEDPA began to run on its effective date, i.e., April 24, 1996." *Guenther v. Holt*, 173 F.3d 1328, 1331 (11th Cir. 1999) (citations omitted), *cert. denied*, 528 U.S. 1085, 120 S.Ct. 811, 145 L.Ed.2d 683 (2000). This rule from *Guenther* is obviously not applicable in this case because Ennis' conviction became final in 2016.

Section 2244(d)(1)(A) specifically provides that the one-year limitations period will run from "the date on which the judgment became final by the conclusion of direct review or the expiration of time for seeking such review[.]" On direct appeal, the Alabama Court of Criminal Appeals affirmed Ennis' conviction and sentence on August 5, 2016. *Ennis v. State,* 231 So.3d 1151 (Ala. Crim. App. Aug. 5, 2016) (table). Because Ennis did not seek rehearing in the Alabama Court of Criminal Appeals on a timely basis, he could not petition for certiorari review in the Alabama Supreme Court, *see* Ala.R.App.P. 40(d)(1); thus, his conviction became final on August 24, 2016, when the Alabama Court of Criminal Appeals issued a certificate of final judgment of affirmance (Doc. 13-12, PageID. 778). *Brown v. Hooks*, 176 Fed. Appx. 949, 951 (11th Cir. Apr. 18, 2006) ("On March 23, 2001, the Alabama Court of Criminal Appeals affirmed his conviction. Brown did not petition for *certiorari* review in the Alabama Supreme Court, and his conviction became final on April 10, 2001, when the Certificate of Judgment

issued.");[2] s*ee also Bridges v. Johnson*, 284 F.3d 1201, 1202 (11th Cir. 2002) ("Bridges

pled guilty to terroristic threats, aggravated assault and stalking charges, and was

sentenced to 26 years' imprisonment on November 12, 1996. He did not appeal his

convictions and sentences, but he did request that his sentence be reviewed by a

sentence review panel, pursuant to O.C.G.A. § 17-10-6. . . . As provided in 28 U.S.C. §

2244(d)(1)(A), his judgment became final on the date that the time for seeking direct

review expired; this date was not affected by his application for sentence review,

because an application for sentence review is not a part of the direct appeal process

under Georgia law. . . . Accordingly, Bridges' judgment of conviction became final on

December 21, 1996, the date on which his 30-day right to appeal the November 21,

1996 judgment expired."); *Tinker v. Moore*, 255 F.3d 1331, 1332 & 1333 (11th Cir.

2001) ("Tinker was convicted on the robbery charge, and on January 29, 1997, the

Third District Court of Appeal affirmed his conviction. . . . The mandate issued on

February 14, 1997. . . . Under Florida law, a judgment against a criminal defendant

becomes final upon issuance of the mandate on his direct appeal. . . . Tinker's mandate

issued on February 14, 1997, and thus he had until February 13, 1998, to file his § 2254

petition, absent tolling of the limitations period."), *cert. denied*, 534 U.S. 1144, 122 S.Ct.

1101, 151 L.Ed.2d 997 (2002).[3] Accordingly Ennis' limitations period commenced on

August 24, 2016, and expired on August 23, 2017.

---

[2]     "Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir. R. 36-2.

[3]     This Court recognizes that AEDPA's one-year statute of limitations "allows a prisoner the time to seek direct review in the Supreme Court of the United States." *Pugh v. Smith*, 465 F.3d 1295, 1299 (11th Cir. 2006); *see also Bond v. Moore*, 309 F.3d 770, 774 (11th Cir. 2002) ("Appellant was entitled to file a petition for writ of certiorari in the United States (Continued)

Petitioner did not collaterally attack his conviction and sentence in the state
courts of Alabama and, therefore, he is unable to take advantage of the tolling provision
built into § 2244(d), 28 U.S.C. § 2244(d)(2) ("The time during which a properly filed
application for State post-conviction or other collateral review with respect to the
pertinent judgment or claim is pending shall not be counted toward any period of
limitation under this section."); *Guenther, supra*, 173 F.3d at 1331 ("'The time during
which a properly filed application for State post-conviction or other collateral review with
respect to the pertinent judgment or claim is pending shall not be counted toward any
period of limitation in [subsection (d)].'"). In other words, because Ennis did not
collaterally attack his conviction and sentence in the state courts of Alabama, his

---

Supreme Court within 90 days of the entry of the judgment against him by the Florida Supreme
Court. Sup.Ct.R. 13.1. The statute of limitations under 28 U.S.C. § 2244(d) should not have
begun to run until this 90-day window had expired. Appellant's state judgment became final on
December 13, 1996, when the Florida Supreme Court denied Appellant's motion for a
rehearing. The statute of limitations should have begun to run, therefore, on March 17, 1997.").
However, in those instances, as here, where a petitioner is not entitled to seek review in the
Supreme Court of the United States, he is not entitled to the benefit of the 90-day period for
filing a petition for writ of certiorari in the United States Supreme Court, Sup. Ct. R. 13.1
("Unless otherwise provided by law, a petition for writ of certiorari to review a judgment in any
case, civil or criminal, entered by a state court of last resort . . . is timely when it is filed with the
Clerk of this Court within 90 days after the entry of the judgment. A petition for a writ of certiorari
seeking review of a judgment of a lower state court that is subject to discretionary review by the
state court of last resort is timely when it is filed with the Clerk within 90 days after entry of the
order denying discretionary review."); 28 U.S.C. § 1257(a) ("Final judgments or decrees
rendered by the highest court of a State in which a decision could be had, may be reviewed by
the Supreme Court by writ of certiorari where . . . any title, right, privilege, or immunity is
specially set up or claimed under the Constitution or the treaties or statutes of, or any
commission held or authority exercised under, the United States."). *See Pugh,* 465 F.3d at
1299-1300. As previously indicated, Ennis did not seek certiorari relief in the state court of last
resort, that is, the Alabama Supreme Court, and could not seek such review because of his
failure to timely seek rehearing before the Alabama Court of Criminal Appeals, *see*
Ala.R.App.P.40(d)(1); therefore, he was not entitled to seek direct review in the United States
Supreme Court. *See Pugh, supra.*  Ennis' conviction became final when the certificate of
judgment issued from the Alabama Court of Criminal Appeals on August 24, 2016, *Brown,*
*supra,* and this Court need not add to that final judgment date the 90 days contemplated in
Supreme Court Rule 13.1, *compare Pugh,* 465 F.3d at 1299-1300 *with Tinker, supra,* 255 F.3d
at 1332 & 1333.

limitations period never tolled, running unabated from August 24, 2016 until August 23, 2017. *Cf. Sibley v. Culliver,* 377 F.3d 1196, 1204 (11th Cir. 2004) ("A state court filing after the federal habeas filing deadline does not revive it."); *Webster v. Moore*, 199 F.3d 1256, 1259 (11th Cir.) ("Under § 2244(d)(2), even 'properly filed' state-court petitions must be 'pending' in order to toll the limitations period. A state-court petition like Webster's that is filed following the expiration of the limitations period cannot toll that period because there is no period remaining to be tolled."), *cert. denied*, 531 U.S. 991, 121 S.Ct. 481, 148 L.Ed.2d 454 (2000). Accordingly, the only avenue by which this Court can consider the merits of the claims raised in Ennis' petition is by finding that he is entitled to equitable tolling of AEDPA's one-year limitations period, or, otherwise, by finding that he has established his actual factual innocence of the crime—murder—for which he was convicted by a jury of his peers on October 8, 2015.

In *Holland v. Florida*, 560 U.S. 631, 130 S.Ct. 2549, 177 L.Ed.2d 130 (2010), the Supreme Court specifically held, for the first time, that "§ 2244(d) is subject to equitable tolling in appropriate cases[,]" *id.* at 645, 130 S.Ct. at 2560, and reiterated "that a 'petitioner' is 'entitled to equitable tolling' only if he shows '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." *Id.* at 649, 130 S.Ct. at 2562. For its part, the Eleventh Circuit has long embraced the doctrine of equitable tolling with regard to the one-year limitations period at issue: "Equitable tolling is to be applied when '"extraordinary circumstances" have worked to prevent an otherwise diligent petitioner from timely filing his petition.' . . . Thus, the petitioner must show both extraordinary circumstances and due diligence in order to be entitled to equitable tolling." *Diaz v. Secretary for the Dep't*

*of Corrections*, 362 F.3d 698, 700-701 (11th Cir. 2004) (citation omitted). "Section 2244 is a statute of limitations, not a jurisdictional bar. Therefore, it permits equitable tolling 'when a movant untimely files because of extraordinary circumstances that are both beyond his control and unavoidable even with diligence.'" *Steed v. Head,* 219 F.3d 1298, 1300 (11th Cir. 2000) (citation omitted). Thus, the one-year limitations provision need not be equitably tolled unless there is evidence that "extraordinary circumstances" beyond petitioner's control made it impossible for him to file his petition on time.  *See Miller v. New Jersey State Dep't of Corrections*, 145 F.3d 616, 618-619 (3rd Cir. 1998) ("[E]quitable tolling is proper only when the 'principles of equity would make [the] rigid application [of a limitation period] unfair.' . . . Generally, this will occur when the petitioner has 'in some extraordinary way . . . been prevented from asserting his or her rights.' . . . The petitioner must show that he or she 'exercised reasonable diligence in investigating and bringing [the] claims.' . . . Mere excusable neglect is not sufficient."). The Supreme Court in *Holland* indicated that "[t]he diligence required for equitable tolling purposes is reasonable diligence, not maximum feasible diligence[,]" *id*. at 653, 130 S.Ct. at 2565, and gave the following guidance with respect to "extraordinary circumstances":

> We have previously held that "a garden variety claim of excusable neglect," such as a simple "miscalculation" that leads a lawyer to miss a filing deadline, does not warrant equitable tolling. But the case before us does not involve, and we are not considering, a "garden variety claim" of attorney negligence. Rather, the facts of this case present far more serious instances of attorney misconduct. And, as we have said, although the circumstances of a case must be "extraordinary" before equitable tolling can be applied, we hold that such circumstances are not limited to those that satisfy the test that the Court of Appeals used in this case.

> The record facts that we have set forth in Part I of this opinion suggest that this case may well be an "extraordinary" instance in which

petitioner's attorney's conduct constituted far more than "garden variety" or "excusable neglect." To be sure, Collins failed to file Holland's petition on time and appears to have been unaware of the date on which the limitations period expired-two facts that, alone, might suggest simple negligence. But, in these circumstances, the record facts we have elucidated suggest that the failure amounted to more: Here, Collins failed to file Holland's federal petition on time despite Holland's many letters that repeatedly emphasized the importance of his doing so. Collins apparently did not do the research necessary to find out the proper filing date, despite Holland's letters that went so far as to identify the applicable legal rules. Collins failed to inform Holland in a timely manner about the crucial fact that the Florida Supreme Court had decided his case, again despite Holland's many pleas for that information. And Collins failed to communicate with his client over a period of years, despite various pleas from Holland that Collins respond to his letters.

*Id.* at 651-652, 130 S.Ct. at 2564. A federal court can also consider the merits of an untimely § 2254 motion if the petitioner establishes that he is factually innocent of the crime for which he was convicted. *See San Martin v. McNeil,* 633 F.3d 1257, 1268 (11th Cir.) ("The actual innocence exception is 'exceedingly narrow in scope,' and the petitioner must demonstrate that he is factually innocent rather than legally innocent."), *cert. denied sub nom. San Martin v. Tucker,* 565 U.S. 843, 132 S.Ct. 158, 181 L.Ed.2d 73 (2011).

In this case, Petitioner has not established that the instant habeas corpus petition was timely filed nor has he established that extraordinary circumstances and due diligence support equitable tolling of the limitations period. *Compare Spottsville v. Terry*, 476 F.3d 1241, 1245 (11th Cir. 2007) ("'The burden of establishing entitlement to this extraordinary remedy plainly rests with the petitioner[.]'") *with Pugh, supra,* 465 F.3d at 1300-01 ("Pugh bore the burden of establishing that equitable tolling was warranted."). In this case, Ennis essentially tenders three equitable tolling arguments: (1) his age and ignorance of the law; (2) his family lacked the necessary resources to obtain an attorney

to assist in the filing of a federal habeas petition; and (3) his appellate attorney, who also represented him at trial, failed to communicate with him regarding his appeal and never sent him any legal mail regarding the need to file a federal habeas corpus petition.[4] Unfortunately for Ennis, none of his arguments are sufficient to excuse his failure to file the instant petition in a timely manner.

Turning to his first argument, there are a virtual avalanche of cases establishing that ignorance of the law is insufficient to support equitable tolling of the statute of limitations. *See, e.g., Moore v. Frazier,* 605 Fed.Appx. 863, 868 (11th Cir. Mar. 31, 2015) ("We have stated that '*pro se* litigants, like all others, are deemed to know of the one-year statute of limitations.' . . . And we have not accepted a lack of a legal education as an excuse for a failure to file in a timely fashion."), *cert denied,* 577 U.S. 855, 136 S.Ct. 124, 193 L.Ed.2d 97 (2015); *Kreutzer v. Bowersox,* 231 F.3d 460, 463 (8th Cir. 2000) (recognizing that "[e]ven in the case of an unrepresented prisoner alleging a lack of legal knowledge or legal resources, equitable tolling has not been warranted."), *cert. denied sub nom. Kreutzer v. Luebbers,* 534 U.S. 863, 122 S.Ct. 145, 151 L.Ed.2d 97 (2001); *Marsh v. Soares,* 223 F.3d 1217, 1220 (10th Cir. 2000) (finding petitioner's *pro se* status and ignorance of the law are insufficient to support equitable tolling of the statute of limitations), *cert. denied,* 531 U.S. 1194, 121 S.Ct. 1195, 149 L.Ed.2d 110 (2001); *Felder v. Johnson,* 204 F.3d 168, 171-72 (5th Cir.) (ignorance of the law and *pro se* status do not constitute "rare and exceptional" circumstances justifying equitable tolling), *cert. denied,* 531 U.S. 1035, 121 S.Ct. 622, 148 L.Ed.2d 532

---

[4] Thus, it is Ennis' position that he should not be held responsible for the untimeliness of the present petition. (*See* Doc. 16).

(2000); *Terry v. Hurley,* 2014 WL 1660708, *2 (M.D. Ala. Mar. 10, 2014) ("[I]t is well settled that an inmate's lack of legal knowledge, the denial of access to a law library, his failure to understand legal principles and/or the inability to recognize potential claims for relief at an earlier juncture do not constitute extraordinary circumstances sufficient to warrant equitable tolling of the limitation period."); *Teel v. Farrell*, 2006 WL 1148817, *4 (M.D. Ala. Apr. 28, 2006) ("[A]n inmate's status as a pro se litigant does not warrant equitable tolling."); *Gardner v. Walker*, 2005 WL 1127137, *1 (M.D. Ga. May 7, 2005) ("'Ignorance of the law is no excuse; it is not a reason for equitable tolling.' . . . Here, Petitioner's Objection is without merit because his ignorance of AEDPA's limitations period fails to amount to 'extraordinary circumstance[s]' for equitable tolling purposes."). Moreover, Petitioner's purported tender age does nothing to further advance this argument because he offers nothing regarding how his age—he was almost 17 when his one-year limitations period began and almost 18 when it expired—made him less capable of filing a timely federal habeas corpus than an older defendant similarly asserting "ignorance" of the law.

The inability of Ennis' family to retain an attorney to assist in the filing of a federal habeas petition certainly does not establish grounds for equitable tolling, as it was Petitioner's responsibility to see that his federal petition was timely filed and the fact that his family could not afford an attorney to assist him does not establish extraordinary circumstances. That extraordinary circumstances are not present in this regard is clear because there exists no legal right to representation in collateral actions. *Whiddon v. Dugger,* 894 F.2d 1266, 1267 (11th Cir.), *cert. denied,* 498 U.S. 834, 111 S.Ct. 102, 112 L.Ed.2d 73 (1990). And because Ennis offers no explanation for how his family's

20

inability to retain an attorney directly relates to his inability to timely file his federal habeas corpus petition, this argument in favor of equitable tolling fails.

Petitioner's third and final argument in support of equitable tolling is to blame his attorney, who represented him at trial and on appeal, for failing to communicate with him regarding the status of his appeal and to inform him, through legal mail, of the need to file his federal habeas corpus petition. Initially, the undersigned would note that in making this argument, Ennis specifically points out that his mother paid the attorney an additional $3,000 to pursue his direct appeal (Doc. 16, PageID. 799) and the record establishes that Ennis' trial attorney also filed his direct appeal. However, there is nothing in the record to suggest that this attorney was retained to handle the instant petition and, indeed, Ennis' second argument in favor of equitable tolling—that his family could not afford to retain an attorney to assist him in the filing of a federal habeas petition—establishes the contrary. There exists no legal right to representation in collateral actions, and because Petitioner's trial attorney was clearly retained to prosecute the direct appeal and nothing beyond the direct appeal, Ennis has no basis to suggest that his appellate attorney had any duty or responsibility (via legal mail) to advise him about the one-year statute of limitations on filing federal collateral attacks on his conviction and sentence. Besides, legal mail is a two-way street, and while his appellate attorney was responsible for telling him about the status of his appeal, Ennis should have communicated with his attorney about the status of the appeal. So, while it is not at all clear when Ennis learned about the status of his direct appeal, because he never once mentions when he learned about the status of his appeal, his habeas corpus petition makes clear that he certainly knew at some point that the Alabama Court of

Criminal Appeals affirmed his conviction and sentence on August 5, 2016. (*See* Doc. 7,

PageID. 90). Moreover, the remainder of the record establishes to the undersigned's

satisfaction that Ennis certainly knew, at the very latest, when he penned his December

11, 2018 three-page letter requesting Circuit Judge Ben Brooks to reconsider his life

sentence (*see* Doc. 15-13, PageID. 784) that his direct appeal had been unsuccessful

because, otherwise, there would have been no need for Ennis to direct anything to the

trial judge if his case was still on appeal. And though Petitioner's one-year limitations

period had already expired by December 11, 2018, Ennis could have made a more

tenable argument for equitable tolling of the limitations period had his federal habeas

petition been filed on or near that date. However, given that Ennis waited until July 20,

2020 to file the instant federal collateral attack (*see* Doc. 1), more than nineteen (19)

months after December 11, 2018 (and, of course, almost 3 years after the one-year

limitations period expired), he has no tenable equitable tolling argument because

clearly, he did not act with due diligence in filing his federal habeas corpus petition.

Finally, Ennis has not shown that he is entitled to have the untimeliness of his §

2254 petition excused based on actual innocence. In *McQuiggin v. Perkins*, 569 U.S.

383, 133 S.Ct. 1924, 185 L.Ed.2d 1019 (2013), the Supreme Court specifically held that

"actual [factual] innocence, if proved, serves as a gateway through which a petitioner

may pass whether the impediment is a procedural bar . . . or, as in this case, expiration

of the statute of limitations." *Id*. at 386, 133 S.Ct. at 1928. However, the Supreme Court

also notably cautioned that "tenable actual-innocence gateway pleas are *rare*[.]" *Id*.

(emphasis supplied). "'[A] petitioner does not meet the threshold requirement unless he

persuades the district court that, in light of the new evidence, no juror, acting

reasonably, would have voted to find him guilty beyond a reasonable doubt.'" *Id*., quoting *Schlup v. Delo,* 513 U.S. 298, 329, 115 S.Ct. 851, 868, 130 L.Ed.2d 808 (1995) (other citation omitted). Here, of course, Ennis makes no actual innocence argument because he has offered no new evidence establishing his actual (factual) innocence of the murder of Joseph Berryhill (*compare* Doc. 7 *with* Docs. 15 & 16); therefore, it is clear that petitioner cannot take advantage of the actual innocence gateway recognized in *McQuiggin.*

In short, the undersigned concludes that nothing other than Ennis' own lack of due diligence is responsible for the untimeliness of the filing of the instant petition. This is not one of those rare cases in which principles of equitable tolling can save petitioner from AEDPA's one-year limitations period, nor has he established his actual innocence of the offense for which he was convicted by a jury of his peers.

**B.      Exhaustion of State Remedies and the Procedural Default Doctrine.**

A threshold issue in a federal habeas corpus case brought by a state prisoner is whether the petitioner has properly raised the federal constitutional claim in the state courts, thereby exhausting all available state court remedies. 28 U.S.C. § 2254(b). The origins of the exhaustion requirement are found in principles of comity, "which protect the state court[]s['] role in the enforcement of federal law and prevent disruption of state court proceedings." *Jackson v. Estes,* 2015 WL 5117717, *8 (N.D. Ala. Aug. 28, 2015), citing *Rose v. Lundy,* 455 U.S. 509, 518, 102 S.Ct. 1198, 1203, 71 L.Ed.2d 379 (1982).[5]

---

[5]      The Supreme Court has long held

(Continued)

23

In order to exhaust his state remedies, a state prisoner who seeks federal habeas corpus relief must present the same claim to the state court that he presents to the federal court. *Picard v. Connor,* 404 U.S. 270, 275-76, 92 S.Ct. 509, 512, 30 L.Ed.2d 438 (1971). Thus, in order to exhaust state remedies, a petitioner must fairly present every issue raised in his federal petition to the state's highest court,[6] either on direct appeal or on collateral review.[7] *See Castille v. Peoples,* 489 U.S. 346, 351, 109 S.Ct. 1056, 1060, 103 L.Ed.2d 380 (1989) (quotation marks and citation omitted). In addition, the state court petition must make the state courts

that a state prisoner's federal habeas petition should be dismissed if the prisoner has not exhausted available state remedies as to any of his federal claims. (citations omitted) This exhaustion requirement is also grounded in principles of comity; in a federal system, the States should have the opportunity to address and correct alleged violations of state prisoners' federal rights.

.     .     .

[A] habeas petitioner who has failed to meet the State's procedural requirements for presenting his federal claims has deprived the state courts of an opportunity to address those claims in the first instance. A habeas petitioner who has defaulted his federal claims in state court meets the technical requirement for exhaustion; there are no state remedies any longer "available" to him.  (citations omitted) In the absence of the independent and adequate state ground doctrine in federal habeas, habeas petitioners would be able to avoid the exhaustion requirement by defaulting their federal claims in state court. The independent and adequate state ground doctrine ensures that the States' interest in correcting their own mistakes is respected in all federal habeas cases.

*Coleman v. Thompson,* 501 U.S. 722, 731 & 732, 111 S.Ct. 2546, 2554-2555 & 2555, 115 L.Ed.2d 640 (1991).


[6]     And, of course, therefore, "[c]laims which have never been presented to a state court . . . are procedurally defaulted if presentation of the claims in state court would be barred by state procedural rules." *Sanchez v. Hetzel,* 2014 WL 1491178, *2 (M.D. Ala. Apr. 15, 2014) (citations omitted).

[7]     Indeed, "[t]o challenge a conviction issued by an Alabama state court, a petitioner must assert the [federal] claim on direct appeal or in a Rule 32 proceeding, appeal any adverse ruling, seek rehearing in the Alabama Court of Criminal Appeals, and file a petition for writ of certiorari in the Alabama Supreme Court." *Shapley v. Thomas,* 2014 WL 4470700, *4 (N.D. Ala. Sept. 4, 2014) (citations omitted); *see Smith v. Jones,* 256 F.3d 1135, 1138 (11th Cir. 2001) ("[I]n order to exhaust state remedies as to a federal constitutional issue a petitioner is required to file a petition for discretionary review in the state's highest court raising that issue, if discretionary review is part of the appellate procedure in the state, [*O'Sullivan v. Boerckel,* 526 U.S.] at 845-47, 119 S.Ct. at 1732-34."), *cert. denied*, 534 U.S. 1136, 122 S.Ct. 1081, 151 L.Ed.2d 982 (2002).

aware that the claims asserted do, in fact, raise federal constitutional claims. *See Snowden v. Singletary,* 135 F.3d 732, 735 (11th Cir. 1998).

"[T]he state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition." *O'Sullivan v. Boerckel,* 526 U.S. 838, 842, 119 S.Ct. 1728, 1731, 144 L.Ed.2d 1 (1999). More precisely, "[b]ecause the exhaustion doctrine is designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts, . . . state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *Id.* 845, 119 S.Ct. at 1732; *see also Kelley v. Secretary for Dep't of Corrs.,* 377 F.3d 1317, 1344 (11th Cir. 2004) ("The petitioner must present his claims to the state courts such that they are permitted the 'opportunity to apply controlling legal principles to the facts bearing upon (his) constitutional claim.'"). If a petitioner has failed to exhaust state remedies that are no longer available, that failure is a procedural default which will bar federal habeas relief, unless either the cause and prejudice or the fundamental miscarriage of justice exception is established.

*Jackson, supra,* at *8 (footnotes added and footnote omitted). In other words, when a petitioner has procedurally defaulted a claim by failing to exhaust state court remedies that are no longer available, *see O'Sullivan, supra,* 526 U.S. at 848-49, 119 S.Ct. at 1734, a federal court is barred from reaching the merits of that claim unless the petitioner "can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claim[] will result in a fundamental miscarriage of justice." *Coleman, supra*, 501 U.S. at 750, 111 S.Ct. at 2565. The cause and prejudice standard applies "uniformly to all independent and adequate state procedural defaults." *Id.* at 750-751, 111 S.Ct. at 2565.

In procedural default cases, the cause standard requires the petitioner to show that some objective factor external to the defense impeded counsel's efforts to raise the claim in state court. Objective factors that constitute cause include interference by officials that makes compliance with the state's procedural rule impracticable, and a showing that the factual or legal basis for a claim was not reasonably available to counsel. In addition, constitutionally [i]neffective assistance of counsel is

25

> cause. Attorney error short of ineffective assistance of counsel, however, does not constitute cause and will not excuse a procedural default. Once the petitioner has established cause, he must show actual prejudice resulting from the errors of which he complains.
>
> Federal courts retain the authority to issue the writ of habeas corpus in a further, narrow class of cases despite a petitioner's failure to show cause for a procedural default. These are extraordinary instances when a constitutional violation probably has caused the conviction of one innocent of the crime. We have described this class of cases as implicating a fundamental miscarriage of justice.

*McCleskey v. Zant*, 499 U.S. 467, 493-494, 111 S.Ct. 1454, 1470, 113 L.Ed.2d 517

(1991) (internal quotation marks and citations omitted).

In his answer, the respondent asserts that all of petitioner's claims are procedurally defaulted under *O'Sullivan v. Boerckel*, 526 U.S. 838, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999) due to Ennis' failure to "exhaust his claims throughout one complete round of appellate review in state court[]" (*see* Doc. 13, PageID. 121, citing *O'Sullivan v. Boerckel*). *Compare McNair v. Campbell,* 416 F.3d 1291, 1302 & 1305 (11th Cir. 2005) ("Habeas petitioners generally cannot raise claims in federal court if those claims were not first exhausted in state court. . . . In order to be exhausted, a federal claim must be fairly presented to the state courts. . . . [I]n order to ensure that state courts have the first opportunity to hear all claims, federal courts 'have required a state prisoner to present the state courts with the ***same*** claim he urges upon the federal courts.' . . . It is well established that when a petitioner has failed to exhaust his claim by failing to fairly present it to the state courts and the state court remedy is no longer available, the failure also constitutes a procedural bar. . . . In such a situation, the Supreme Court has held that the petitioner has failed to properly exhaust his state court remedies and therefore has procedurally defaulted his claims. *O'Sullivan v.*

*Boerckel,* 526 U.S. 838, 848, 119 S.Ct. 1728, 1734, 144 L.Ed.2d 1 (1999).")*, cert. denied,* 547 U.S. 1073, 126 S.Ct. 1828, 164 L.Ed.2d 522 (2006), *with Kelley v. Secretary for the Dep't of Corrections,* 377 F.3d 1317, 1344 & 1351 (11th Cir. 2004) ("[T]he prohibition against raising nonexhausted claims in federal court extends not only to broad legal theories of relief, but also to the specific assertions of fact that might support relief. For example, habeas petitioners may not present particular factual instances of ineffective assistance of counsel in their federal petitions that were not first presented to the state courts. . . . Dismissing a mixed petition is of little utility [] when the claims raised for the first time at the federal level can no longer be litigated on the merits in state court because they are procedurally barred. In such a case, requiring the petitioner to return to state court only to make a futile application for relief simply delays the federal courts' adjudication of his petition."), *cert. denied,* 545 U.S. 1149, 125 S.Ct. 2962, 162 L.Ed.2d 906 (2005).

In this case, it is indisputable that Ennis did not exhaust any of his constitutional claims in the Alabama Supreme Court (*compare* Doc. 7, PageID. 90 *with* Doc. 13), and the reason he did not (and could not) exhaust his claims in Alabama's high court is because he failed to petition the Alabama Court of Criminal Appeals timely for rehearing. *See* Ala.R.App.P. 40(c) & (d)(1). Accordingly, it is clear that all of Ennis' constitutional claims are procedurally defaulted because there are no state remedies that remain open to him. *See, e.g., Jackson, supra,* at *8. Stated somewhat differently, all of Ennis' claims are procedurally defaulted because state procedural rules would bar him from raising these claims in the state courts of Alabama. *Compare McNair, supra,* 416 F.3d at 1302 & 1305 *with Bailey v. Nagle,* 172 F.3d 1299, 1305 (11th Cir.

1999) ("[F]ederal courts may treat unexhausted claims as procedurally defaulted, even absent a state court determination to that effect, if it is clear from state law that any future attempts at exhaustion would be futile."). As a result, this Court is barred from reaching the merits of any claims raised by Ennis absent Petitioner demonstrating "cause for the default and actual prejudice as a result of the alleged violation of federal law or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman, supra*, 501 U.S. at 750, 111 S.Ct. at 2565.

Although Petitioner filed two responses to this Court's show cause order (*see* Docs. 15 & 16; *compare id. with* Doc. 14), the sole focus of both of those responses is AEDPA's one-year statute of limitations period (*compare* Doc. 15 *with* Doc. 16); in neither response does Ennis address the procedural default doctrine, though this Court's show cause order directed him to do just that (Doc. 14, PageID. 794, fn.2 ("In addition to responding to the statute of limitations defense, the Petitioner should also address the Respondent's procedural default arguments[.]")). And because Ennis' petition itself does not contain any cause and prejudice argument (*see* Doc. 7), this Court should conclude that the cause and prejudice exception to the procedural default doctrine is not applicable in this case. *Compare McKay v. United States,* 657 F.3d 1190, 1196 (11 Cir. 2011) ("Because McKay does not argue on appeal that the cause and prejudice exception applies—nor for that matter did he do so at the district court— we do not address this exception."), *cert. denied,* 568 U.S. 830, 133 S.Ct. 112, 184 L.Ed.2d 52 (2012), *with Macklin v. Singletary*, 24 F.3d 1307, 1313 (11th Cir. 1994) (in abuse of the writ case, appellate court suggests that habeas courts need perform no

analysis when the petitioner fails to argue an exception to application of the doctrine), *cert. denied*, 513 U.S. 1160, 115 S.Ct. 1122, 130 L.Ed.2d 1085 (1995).

The fundamental miscarriage of justice/actual innocence exception does not apply in this case because Petitioner has not attempted to satisfy the standard set forth in *Murray v. Carrier*, 477 U.S. 478, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986). That standard requires Ennis to show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Id.* at 496, 106 S.Ct. at 2649-2650. To be credible, a claim of actual innocence "requires petitioner to support his allegations of constitutional error with new reliable evidence--whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence--that was not presented at trial." *Schlup v. Delo,* 513 U.S. 298, 324, 115 S.Ct. 851, 865, 130 L.Ed.2d 808 (1995); *see also id.* at 327, 115 S.Ct. at 867 ("To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence."). "It is important to note in this regard that 'actual innocence' means factual innocence, not mere legal insufficiency." *Bousley v. United States,* 523 U.S. 614, 623, 118 S.Ct. 1604, 1611, 140 L.Ed.2d 828 (1998) (citation omitted). As previously discussed in regard to the actual innocence gateway in *McQuiggin, supra,* Ennis has not come forward with any new reliable evidence that establishes his actual factual innocence of the murder of Joseph Berryhill for which he was convicted on October 8, 2015. Accordingly, this case is not one of those rare cases in which the actual innocence exception is applicable.

     **C.**    **Certificate of Appealability**.  Pursuant to Rule 11(a) of the Rules Governing § 2254 Cases, the undersigned recommends that a certificate of

appealability in this case be denied. 28 U.S.C. foll. § 2254, Rule 11(a) ("The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."). The habeas corpus statute makes clear that an applicant is entitled to appeal a district court's denial of his habeas corpus petition only where a circuit justice or judge issues a certificate of appealability. 28 U.S.C. § 2253(c)(1). A certificate of appealability may issue only where "the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2243(c)(2). Where, as here, a habeas petition is being denied on procedural grounds without reaching the merits of the underlying constitutional claims, "a COA should issue [only] when the prisoner shows . . . that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484, 120 S.Ct. 1595, 1604, 146 L.Ed.2d 542 (2000); *see Miller-El v. Cockrell,* 537 U.S. 322, 336, 123 S.Ct. 1029, 1039, 154 L.Ed.2d 931 (2003) ("Under the controlling standard, a petitioner must 'sho[w] that reasonable jurists could debate whether  (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were "adequate to deserve encouragement to proceed further."'"). Inasmuch as equitable tolling is an extraordinary remedy which the Eleventh Circuit has rarely granted, *see Diaz, supra*, 362 F.3d at 701 ("[T]his court has rejected most claims for equitable tolling."), and petitioner has defaulted the claims he wishes this Court to address pursuant to *O'Sullivan v. Boerckel, supra*, a reasonable jurist could not conclude either that this Court is in error in dismissing the instant petition or that Ennis should be allowed to proceed further, *Slack,*

*supra*, 529 U.S. at 484, 120 S.Ct. at 1604 ("Where a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further.").

Rule 11(a) further provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."  If there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.  *Brightwell v. Patterson,* CA 11-0165-WS-C, Doc. 14 (Eleventh Circuit order denying petitioner's motions for a COA and to appeal IFP in a case in which this Court set out the foregoing procedure); *see also Castrejon v. United States,* 2011 WL 3241817, *20 (S.D. Ala. June 28, 2011) (providing for the same procedure), *report and recommendation adopted by* 2011 WL 3241580 (S.D. Ala. Jul. 29, 2011); *Griffin v. DeRosa,* 2010 WL 3943702, at *4 (N.D. Fla. Sept. 20, 2010) (providing for same procedure), *report and recommendation adopted sub nom. Griffin v. Butterworth,* 2010 WL 3943699 (N.D. Fla. Oct. 5, 2010).

## CONCLUSION

The Magistrate Judge again recommends that Stephen Gerard Ennis' petition for writ of habeas corpus, filed pursuant to 28 U.S.C. § 2254 (Doc. 7), be dismissed as time-barred under § 2244(d). Alternatively, Petitioner is not entitled to any relief in this Court because he has procedurally defaulted his claims pursuant to *O'Sullivan v. Boerckel*. Petitioner is not entitled to a certificate of appealability and, therefore, he is not entitled to appeal *in forma pauperis*.

## NOTICE OF RIGHT TO FILE OBJECTIONS

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. *See* 28 U.S.C. § 636(b)(1); FED.R.CIV.P. 72(b); S.D. Ala. GenLR 72(c)(1) & (2). The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice." 11th Cir. R. 3-1. In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

**DONE** this the 27th day of January, 2021.

s/P. Bradley Murray
**UNITED STATES MAGISTRATE JUDGE**